Your Honor, good morning. I'd like to save a few minutes for rebuttal. My name is Michael Levine, and I represent Mr. Brown. I was not the trial attorney. Your Honor, I'd like to address three issues, if I may. The jury issue, the vulnerable victim issue, and the closing argument issue. First, with the jury issue. The court abused its discretion in proceeding with 11 jurors over objection where two alternates were readily available. Whatever the constitutional requirement, and there is no constitutional requirement for 12 jurors, the federal rules of criminal procedure from the founding of the country have required 12 jurors. And even after Williams v. Florida in 1970, the federal rules maintain 12 jurors, good and true, to judge those who are accused of crime. The safeguard for all of us in federal court, the safeguard for us, our families, our children, our friends, our neighbors. Roberts. You know, we appreciate all of that, but the rules have changed a little bit. Well, not — yes, the rules have changed. It's now — They reflect reality. I mean, jurors, even once we send them off to deliberate, you know, they get sick. They do. They do. And one was — For other reasons, they might lose a juror. That's true, and that's why we have alternates. We had two alternates here who were chosen by the parties, who were sworn, who underwent voir dire, who were specifically told by the judge, you're not excused, you stay ready, don't discuss this, things happen, that's why you're chosen. Rule 23 specifically says, after the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror. Here the court found good cause, and I don't understand your client to be objecting to that, and so that court followed Federal rules. It's hard to see how following the Federal rules could be an abuse of discretion. Well, Rule 24 also says, though, the next rule says that the jurors are 12, and the judge can either have an alternate, either proceed with 11 or choose to have alternates. So it's a — it is a — The judge chose to proceed with 11. Well, but it is — it is discretion. But discretion doesn't mean flip a coin. Discretion means you evaluate — The judge didn't flip a coin here. He said save time. That's not flipping a coin. Well, but that's not the only factor to be considered. You don't just say save time, 11 jurors. Well, there were multiple counts here, correct? Yes, but it was — And the jury had deliberated for about a day, correct? Yes, yes. And asked questions. Yes. Yes. Yes. But it was only — first of all, it was a five-day trial. In my brief, I mistakenly put a week. It was a five-day trial when evidence was received. The jury was out for one day, and then they came back in the morning, and the juror was excused. The judge said, well, to save time. To save time. All it's to save time is to call the jurors, let the alternates come back. What's to save time? In tobacco, United States v. Tobacco, you had a somewhat similar situation where a juror couldn't get to court because his keys had been left in the house or something, and the judge said, well, we'll just proceed with 11. The court reversed that. The court said, no, wait a minute. You've got to wait just to wait another day for this juror to come in. Granted, it was only a three-day trial. It wasn't as complex as this case. I grant you that. Nevertheless, this was just a five-day trial. All it would have taken was — did any of the jurors say, judge, we've got to get out of here? I've got a surgery appointment. I've got a vacation. I've got tickets. Was there any indication of that? The Fourth and in the Eighth Circuit have said it's okay for the court to use its discretion in this way. Is there any circuit that said a court can't use its discretion if there's an alternate? If you consider none of the cases that I've seen, and I've distinguished them all in my brief to the best of my ability, none of the cases that I've seen had two alternates sworn, readily available, ready to go in, a phone call away, with a five-day trial. Now, some of those cases were much longer. Some of the cases say there's a concern that if you bring in an alternate because the other jurors have been deliberated — have already been deliberating, there's a concern about whether the new alternate could actually — will they be too weighted down by the peer pressure. And so that's a factor that these courts have weighed against exercising discretion to bring in an alternate. Yes, but the judge — first of all, the judge — Did the court have reasonably considered that? It could have, but it didn't. The court just said to save time. The court didn't say, you know, I'm concerned about this, a juror coming in, and they're already made up their minds. And number — the court didn't say anything. The only fact that — No, that's not — counsel, that's not fair. The objection was about the two alternates. If we bring them back, we've got to run them down, get them back, and the jury has to start over. True. Okay. And then he goes on to say, he didn't flip a coin or just leave it at that, we have 14 counts. And if this jury, for example, has made decisions on any number of counts, let's say 12 or 13 or whatever, that goes out the window and they've got to start over with the alternate. That's right. And have discussions and then vote on it. That's right. Okay. So — Well, that's right. It sounds like he's exercising some analysis of what — Well, all he's saying is the jury has to start over again. But that's true. Of course. But you instruct the jury, ladies and gentlemen of the jury, you start over again. That's been — that's done in countless cases. But 14 counts on which they'd already in his hypothetical had made decisions on, so they have to start over. They have to start over. That's what happens when you substitute an alternate and — That's right. And there are commentary which indicates that that's one of the problems of introducing a new juror — Well, but — You know, counsel, we're going to be discussing this case in conference, and you can have all the time you want to interrupt me, but — I'm sorry, Your Honor. You better answer the question — Go ahead. I'm sorry. — that we're interested in, at least I'm interested in. I'm sorry, Your Honor. So I'm trying to understand, because I take your point, it's a short trial. Okay. But the dynamic of a jury deliberation is that they go through a process, and they had asked a lot of questions. They sent out questions to the court. Isn't that correct? Yes. Okay. So they'd obviously gone through a fair amount of deliberation. Yes. So then they introduce the alternate jury, and they have to start all over. Yes. And the commentary says, well, one of the problems of introducing a juror like that is that that juror will come in, not have been part of the discussions, could feel intimidated and the like. So there's a lot of commentary suggesting that it's preferable not to introduce a new juror in a late stage. That's under Rule 24 where the option would be to declare a mistrial. Yes. And this is just substituting in an alternate. Yes. But the same dynamic, you know, is still there. So help us understand in not just flippantly saying he flipped a coin, and that was an intended pun. Well, I didn't mean to. That was an intended pun. Okay. So help us understand the dynamic. I will. The commentary to which you refer is commentary to the federal rule before the 1999 amendment to Rule 24. In Rule 24, the drafters of the Federal Rules of Criminal Procedure added the rule that you can you have a choice. You can either declare a mistrial, you can proceed with 11, or you can call back, you can have alternates. When the framers of the Federal Rules of Criminal Procedure added that provision that you can call back alternates even after the jury went out to deliberate, that basically, in my view, negated or at least countered that commentary. It rejected that commentary because the framers would never, if they had acceded to that commentary that you just cited, Your Honor, they never would have established the Federal Rule 24 which says, no, you can call back jurors, because before that Federal Rule 24, once the jury went out to deliberate, the judge was required to excuse the alternates. That wasn't the case. So Congress, in essence, rejected that rule, at least as a dispositive factor. It said, sure, one of the factors you should consider is how long the deliberations have gone on, how long the trial, how long the jurors may have deliberated. But after all, one of the premises of our, one of the premises of the law is that jurors follow instructions. So while it's true that under your hypothetical or the jurors may have reached a verdict, say, 11 jurors or may have decided an issue, if a judge says to them, Ladies and gentlemen, we have a new juror coming in. You must disregard or start all over from scratch. Now, realistically, does that happen? Who knows? But the law says jurors follow instructions. That's a basic tenet. So if a judge says you start over, then you start over. And I've cited a couple of cases in my brief, and there are many where jurors start over. That's the instruction given. So I hope I've answered the Court's question. Thank you. Other factors, we're just talking about one day, even with this possibility that a juror might feel, oh, gee, you guys have already decided this. Still, so what? The defendant is entitled to 12 jurors as a rule. The defendant entitled to 12 jurors when the rule says it's okay to proceed with 11. I guess I don't understand the equities on the other side. The equities on the court, the Supreme Court says, you know, the number 12 has no specific importance other than for mystics. Well, Congress thinks otherwise. With all due respect, Congress didn't change the 12-juror requirement after. Are you talking about the Federal rules? Yes. Okay. They're the Supreme Court's rules, and they say it's okay to proceed with 11. Well, and they're adopted by the — I assume the Federal rules are adopted by Congress or have the same force and effect as — They can reject them. I'm sorry? They can reject them. Yes. They can reject it. By not rejecting, essentially they're adopting. But it's a discretionary call. And I'm sorry. Could you repeat your question, Your Honor? I got off track. I don't understand your argument that a defendant is entitled to 12 jurors when the rules say otherwise and the Supreme Court says otherwise. Well, the commentary to the rule — in the commentary, it says proceeding — even with the ability to proceed with 11, it says this is an unusual step. The case I've cited, I think it's Garibay, summarizes this and says, look, this is a very unusual step to proceed with 11, and at the very least, you've got to balance the equities. That's all I'm saying, balance the equities. So I didn't mean to say Judge King. He's a very good judge. But at least on the record here, the equities were not sufficiently balanced. And what's on the one side is the general right to have 12, in the normal case, to have 12 jurors that would have gone through voir dire, that had been chosen by the parties. You've got two minutes and 25 seconds.  All right. The closing argument issue is that — Turn to the enhancement issue. All right. Vulnerable victim enhancement. Okay. The issue is, did the judge make the appropriate finding when he said, I find that these victims are potentially vulnerable? And my position is, no. Potential under a dictionary definition means capable of becoming in the future. Isn't that just an oversight by the judge? I don't know. Maybe it is. Then the case has to be remanded, and he can fix that up in a second. But if you look at all the victim witness statements that were supplied, don't the — and the ones called out by the — in the PSR. Yes. But these victims — Isn't there enough there? I mean, preponderance of the evidence is the standard there. Yes. It's true. But these victim witness statements were submitted 8 years after the fact. In other words, the fraud occurred in 2002, 2003. The indictment was in 2006. The sentencing was in 2011. So the victims are saying now, I'm sure, as they were elderly, as we get older, we do get more vulnerable in many ways. And these folks were now 8 to 10 years older than they were. So sure, maybe at that time they're expressing in their letters, rightfully so, they felt defrauded and they felt vulnerable and their spouses had died in the intervening 10 years. Yes. But the judge could have easily — I thought at the time that he carried out his scheme that, you know, he had records, he had their credit cards, and he was able to look at their records. He knew what their account balances were, and he was able to be a little bit selective. Well, even the government in one of its briefs below said, oh, no, he would defraud anybody. It didn't have to be anybody. True, there were a lot of people in the church. But the government's argument below was he was an equal opportunity defrauder. He didn't choose specifically elderly people, at least according to the government's arguments at trial. He was whoever would give him a credit card, he would go after. So, again, a finding of potential vulnerability, if anything, that to me is a finding of not now vulnerable, vulnerable perhaps in the future. Thank you, Your Honors. All right. I'll give you a minute for rebuttal. Thank you, Your Honors. We'll hear from the government. May it please the Court, Kelly Zusman appearing on behalf of the United States. On the question of the 11-person jury, I wanted to clarify a little bit about the record there in terms of exactly how long this jury had been deliberating. Now, the jury began deliberating on a Monday, and that was Monday, May 9th. They'd heard closing arguments, and then the Court ordered lunch. So they were deliberating for at least a half a day on that Monday. They returned on Tuesday, deliberated the entire day, and it was on Wednesday that juror number 11 reported that she was ill. So Judge King was well aware of the fact that this jury had been out for over a day and a half. They'd asked questions. They'd clearly been working very, very hard. And as both Williams v. Florida and the advisory note to Rule 23 recognize, there is no magic number to 12. There's no detriment to a defendant with a jury of less than 12. And certainly, as Judge Ikuda pointed out, it's hard to envision how Judge King could have abused his discretion when he did precisely what Rule 23 told him he could do. And that was after careful consideration. In addition to all of the factors that were read earlier, Judge King made clear that he had read the advisory committee notes to Rule 23. And those notes are a very strong disincentive to bringing an alternate in after deliberations had proceeded for some time. Unless there are any further questions on that, I'm happy to turn to the other issues. On vulnerable victim, the defendant has argued that they may have been vulnerable at the time of sentencing in 2011. But if you look at those victim impact statements, they describe what happened at the time of the fraud. They describe the conditions that they were in when Mr. Brown and his wife approached them. They describe their financial straits. Their — many of them had significant medical issues. And Mr. Brown exploited those vulnerabilities because he knew about them from their credit reports. He knew about their health issues because he was a fellow church member. So there's very little question that many of these victims were, in fact, vulnerable. And in terms of the remark that Judge King made about them being potentially vulnerable, that really falls within the category of a stray remark. Judge King was an experienced judge. He had presided over this trial. He'd heard all of the testimony from many of these same witnesses who submitted victim impact statements. He was well aware of the law. And in adopting the pre-sentence report, he made that finding. He even said that he wanted to be particularly careful here about how he addressed these enhancements. And he was. He made findings on everything that the defendant objected to. Unless there are any further questions on any of the issues. On the vulnerable victim, going through the statements, they're talking about their health situations or their retirement situation. But they also talk about the position of trust that he held. Does that calculate into vulnerability? I think it may have been an element. Of course, the pre-sentence report also had recommended an enhancement for abuse of trust. I know. That's what I'm saying. Is it double counting for the victim impact statements, if that's the foundation for actual vulnerability, to give any weight to the fact that he was their pastor? I think Judge King shared your concern, which is why he sustained the defendant's objection to the abuse of trust enhancement. He didn't apply that. So in looking simply at vulnerable victim, he was certainly able to consider that element, the fact that Mr. Brown, relative to many of these victims, did hold a position of trust. Not a classic tradition, not like a fiduciary. But again, it was through his relationships with them in their church. Mr. Brown held himself out as a pastor, as a leader, as a very successful businessman. And that's what he used in order to convince many of these people. And many of them he went back to several times, which is another sign that he knew they were vulnerable, which is why he knew he could go back and ask them for more credit cards or to mortgage their house and give him the proceeds. He used all of that. So there was ample evidence in the record to support Judge King's finding that these victims were vulnerable. You know, when you do look at these victim witness statements that were in the record, they ask mainly, they start off by asking about loss, restitution. What's your claim for loss? They don't ask what was your situation like with Mr. Brown at the time you gave him your credit card. Why did you give him your credit card? And I'm sorry, I'm not sure. Well, I'm just, you know, to some extent counsel is right. I mean, these victim witness statements are like, they just reflect what the loss was. I don't know how that, how does that factor into vulnerability? Okay. Many of the victims who, in addition to the victim impact statements, they also testified at the sentencing hearing, or I should say they made statements at the sentencing hearing. And they testified at trial. And much of their trial testimony was about the relationship that they developed with Mr. Brown and about their, the fact that he exploited many of the personal credit cards and to engage in the real estate transactions. So, Your Honor, it's not simply the victim impact statements that were more directed to restitution, but both the trial testimony and the oral statements at sentencing. The ones who testified at, the ones who came forth at the time of the sentencing and offered their statements. Correct. In addition to the people who testified at trial, the Vogels, for example. Okay. Unless there are any further questions, the government would submit. Thank you. Ms. Sussman. Your Honor, with the Court's permission, could I reopen and go back to the closing argument issue? You have a minute. Just a minute. The government argued in its brief that the Court didn't allow the argument about his making all of his appearances as showing evidence of innocence because there was no evidence of that. I just wanted to correct the record that in Excerpt of Record 31, the judge didn't let the attorney put on evidence, even though they could have taken judicial notice that the defendant had been released five years earlier. But you haven't, you didn't argue that that was an erroneous ruling, did you? In other words, that came at the beginning of trial, right? No. That claim towards the end of the trial when the defendant wanted to argue, he was telling the judge, Judge. No, I understand. But the preclusion of evidence came earlier. That's why you didn't put in, or the trial counsel didn't put in evidence. The trial counsel didn't put in evidence because the judge said, I'm not going to allow it. Right. But your brief didn't raise the point. That's right. I missed it. I missed it in my reply brief. In fact, this argument that I'm making now, I missed it. Well, I raised the issue. I just missed this particular argument that the judge precluded the putting on of evidence. If the Court goes to Excerpt of Record 31, you can see that. Thank you. Okay. Thank you very much, counsel. We'll submit that matter now.
judges: Fisher, Paez, Ikuta